OPINION OF THE COURT
 

 Simons, J.
 

 In this article 78 proceeding challenging a State income tax assessment, the issue presented is the proper treatment to be afforded to a nonresident who exercises stock options granted to him as a form of compensation by his New York employer and who later disposes of the stock acquired pursuant to those options. We agree with the position now taken by the Tax Commission that the taxable gain is the difference between the option price and fair market value of the stock on the date the option is exercised, and that gain derived from the subsequent sale of such stock is not income derived from New York sources and thus not taxable.
 

 In 1968, petitioner,
 
 [1]
 
 James Michaelsen, a senior executive working for Avon Products, Inc. in New York City was granted certain stock options in Avon capital stock pursuant to a qualified employee stock option plan
 
 (see,
 
 Internal Revenue Code § 422; 26 USC § 422). He exercised the options by purchasing 3,000 shares of stock on March 13, 1972 and an additional 3,000 shares on February 22, 1973. In 1973, while a resident of Connecticut, he sold all the shares. He reported a gain of $179,761 for 1973 Federal income tax purposes but he did not report any part of that sum on his nonresident New York State income tax return for that year. Respondent Tax Commission audited petitioner’s return and assessed addi
 
 *582
 
 tional personal income tax liability in the amount of $19,017.12. Following a hearing, the Tax Commission determined that the stock was connected with petitioner’s employment and ruled that both the gain derived from the exercise of the option and the gain derived from the subsequent sale of the stock were taxable in New York under Tax Law § 632 (b) (1) (B).
 

 Petitioner then commenced this article 78 proceeding to annul the Commission’s determination, contending that the gain from the sale of the Avon stock was not derived from New York sources. Special Term dismissed the petition, holding that "there was no evidence indicating that the options through which the stock was acquired were issued other than as a form of compensation to petitioner James Michaelsen for either past services or incentive for future services to his employer” (122 Misc 2d 824, 826). The Appellate Division held that the Tax Commission had improperly calculated the gain attributable to New York sources. It therefore remitted the matter to respondent Commission directing it to recompute the tax on the value of the stock options by " 'subtracting] the aggregate exercise price of each issue of options from the aggregate fair market value of the shares of stock on the date that the options became exercisable’ ” (107 AD2d 389, 391, quoting its decision in
 
 Matter of Donahue v Chu,
 
 104 AD2d 523, 525). We granted the Commission leave to appeal.
 

 The Tax Commission’s determination and the confirmation by Special Term attributed both the gain realized from the exercise of the option and the gain realized on the subsequent sale of the stock acquired by exercising the options to compensation for New York State income tax purposes. The Appellate Division holding allowed New York State to tax only the difference between the fair market value of the stock when the options become exercisable and the option price. That formula normally will result in no New York State tax consequences since qualified stock options are usually exercisable when granted and under Internal Revenue Code § 422 (b) (4) the option price, with a limited exception, must equal the fair market value of the stock when the option is granted.
 

 Tax Law § 632 (a) (1) provides that the New York adjusted gross income of a nonresident individual shall include all income entering into a taxpayer’s Federal adjusted gross income, provided that it is "derived from or connected with New York sources”. Section 632 (b) (1) (B) provides that
 
 *583
 
 income attributable to a "business, trade, profession or occupation carried on in this state” shall be considered income derived from or connected with a New York source. Section 632 (b) (2) provides that "[i]ncome from intangible personal property, including * * * gains from the disposition of intangible personal property, shall constitute income derived from New York sources only to the extent that such income is from property employed in a business, trade, profession, or occupation carried on in this state”.
 

 Because New York income tax law evinces a strong intent to conform to Federal authority wherever possible
 
 (Matter of Hunt v State Tax Commn.,
 
 65 NY2d 13, 16;
 
 Matter of Friedsam v State Tax Commn.,
 
 64 NY2d 76, 79-80), it is necessary for background purposes to review the Federal income tax consequences to petitioner in this case. For Federal income tax purposes, in addition to the tax on any gain that petitioner may have realized from the sale of the stock — the fair market value of the stock when sold less the fair market value of the stock on the date the option was exercised — there is also a tax imposed to reflect the compensation the employee received by virtue of having the ability to purchase the stock at less than its fair market value by exercising the option. This principle was firmly established by the Supreme Court in
 
 Commissioner v LoBue
 
 (351 US 243) and petitioner concedes the point.
 

 The more difficult question is how the compensation derived from a stock option is valued. If an option, by virtue of its transferability, has a readily ascertainable fair market value when it is granted, it will be valued at the time it is received by the employee (Internal Revenue Code § 83 [a]; Treas Reg [26 CFR] § 1.83-7 [a]). An option granted, as here, pursuant to a qualified employee stock option plan is not transferable, however (Internal Revenue Code § 422 [b] [6]), and cannot have a readily ascertainable fair market value when it is granted (Treas Reg [26 CFR] § 1.83-7 [b] [1], [2]). Gain derived from these latter options is
 
 realized
 
 when the option is exercised; the option is valued by subtracting the option price from the fair market value of the stock when the option is exercised (Treas Reg [26 CFR] § 1.83-7 [a]). This gain is characterized by Federal authorities as compensation for services performed
 
 (Commissioner v LoBue,
 
 351 US 243, 247,
 
 supra;
 
 Treas Reg [26 CFR] § 1.422-1 [b] [3], example [2]). Although the gain on qualified stock options, such as the options granted to petitioner, is
 
 realized
 
 at the time the options are exercised,
 
 *584
 
 the gain is not
 
 recognized
 
 until the stock is disposed of.
 
 [2]
 
 Thus, although under Federal law both the gain on the appreciation of the stock after it is purchased and the compensation derived from the exercise of the option are actually
 
 recognized
 
 when the stock is sold, there are two realization events reflecting the taxation of two distinct accretions to income.
 

 Federal law does not tax options without a readily ascertainable fair market value at the time they are exercisable because to do so would leave much of the economic value of the option untaxed. "[T]he fair market value of an option is not merely the difference that may exist at a particular time between the option’s exercise price and the value of the property subject to the option, but also includes the value of the option privilege for the remainder of the exercise period” (Treas Reg [26 CFR] § 1.83-7 [b] [3]). The option period is the time frame within which the option may be exercised. The option privilege is the opportunity to benefit from any increase in the value of property subject to the option during such period without risking any capital
 
 (id.).
 

 These Federal tax consequences may be harmonized with Tax Law § 632. While the options granted to petitioner were compensation attributable to his "business, trade, profession or occupation carried on in this state” and therefore taxable in New York under Tax Law § 632 (b) (1) (B), the formula the Appellate Division applied to value the options was incorrect.
 

 Taxing only the difference between the fair market value of the stock on the date the option is first exercisable and the option price differs from Federal law and leaves much of the compensation to the employee untaxed. Plainly the option on the date it becomes exercisable is worth more than merely the difference between the fair market value of the stock at that time and the option price. Indeed, they are usually the same. The employee’s compensation comes from employer’s willing
 
 *585
 
 ness to let the employee benefit from market appreciation in the stock without risk to his own capital. Although, in a sense, the employee makes a passive investment decision if he does not exercise his option when the option becomes exercisable, still the option in actual fact is worth more on the date it becomes exercisable than simply the difference between the fair market value of the stock at that time and the option price, and is appropriately taxed as New York compensation. Because the option is not transferable (Internal Revenue Code § 422 [b] [6]), this extra value cannot be adequately measured on the date the option becomes exercisable (Treas Reg [26 CFR] § 1.83-7 [b] [2]). Thus, in conformity with Federal law, we conclude that the proper method of valuing the compensation derived from an option that has no readily ascertainable fair market value on the date it is granted is to subtract the option price from the fair market value of the stock on the date the option is exercised. Accordingly, we find that respondent’s determination that this income is taxable in New York under Tax Law § 632 (b) (1) (B) is rational.
 

 We only add in passing that the analysis originally used by the Tax Commission (but which it now concedes was incorrect) and Special Term taxes more than the value of the option in that it also imposes a tax on the stock’s gain in value after it is purchased. This treatment mirrors the tax consequences imposed under Federal law, but results in the taxation of intangible personal property not derived from a New York source (Tax Law § 632 [b] [2]). Any gain petitioner realized from an increase in the market value of Avon stock between the time the option was exercised and the time the stock was sold is clearly investment income rather than compensation and, as a nonresident, petitioner cannot be taxed on this amount.
 

 The record does not reveal the value of the Avon stock on the dates the options were exercised — the key dates for purposes of assessing the appropriate New York tax. Accordingly, we modify the order of the Appellate Division by remitting the matter to respondent Commission for an appropriate assessment of tax based upon the difference between the option prices and the fair market value of the stock when the options were exercised, and, as so modified, the order should be affirmed, with costs to appellant.
 

 Chief Judge Wachtler and Judges Meyer, Kaye, Alexander, Titone and Hancock, Jr., concur.
 

 
 *586
 
 Order modified and matter remitted to Supreme Court, Albany County, with directions to remand to the Tax Commission for further proceedings in accordance with the opinion herein and, as so modified, affirmed, with costs to appellant.
 

 [1]
 

 . James Michaelsen’s wife, Vilia Michaelsen, is a named party to this special proceeding because a joint tax return was filed. However, James A. Michaelsen is the Avon employee who received the options and he will be referred to as "petitioner”.
 

 [2]
 

 . Where, as here, the employee disposes of the stock within three years after the option is exercised, the gain on the option must for Federal purposes be reported as ordinary income
 
 (see,
 
 Treas Reg [26 CFR] § 1.422-1 [b] [3], examples [1], [2], for an illustration of the Federal tax consequences to petitioner in this case). If an employee who exercises an option to purchase stock pursuant to a qualified stock option plan holds the stock three years before disposing of it, then for Federal tax purposes the taxpayer is accorded capital gain treatment on all income — both that derived from the exercise of the option and from the sale of the stock (Internal Revenue Code § 421). This does not mean, however, that the employee did not
 
 realize
 
 compensation when he exercised the option, but only that this compensation may be recognized as capital gain.